## CIRCUIT COURT OF LOUDOUN COUNTY

Corby Lane Dixon Ciccarelli

v.

Stephen Matthew Ciccarelli

August 29, 2002

Case No. (Chancery) 21789

BY JUDGE JAMES H. CHAMBLIN

This cause came before the Court on June 18, 2002, August 12, 2002, and August 22, 2002, for hearing on the Motion for *Pendente Lite* Relief filed by the Complainant, Corby Lane Dixon Ciccarelli (Wife or Mother). The contested issues are addressed below.

### Custody and Visitation

Prior to the commencement of the hearing, the parties agreed upon *pendente lite* joint legal custody of their three minor children: Lindsey, age 16, Scott, age 11, and Ben, age 6. They could not agree on the physical custody arrangement.

After consideration of the evidence, the argument of counsel, and the factors of Va. Code § 20-124.3, the Mother is awarded *pendente lite* primary physical custody of the children, provided that when she has one or more of the children she will not have as an overnight guest and will not cohabit with any person of the opposite sex to whom she is not related.

The Defendant, Stephen Matthew Ciccarelli (Husband or Father) is granted visitation with all three children as follows:

1. Every other weekend (on the same schedule as currently in effect) from Friday at 5:00 p.m. to Sunday at 8:00 p.m.; provided, that if the following Monday is a school holiday and the Father is not working, then to Monday at 8:00 p.m.

2. Every Tuesday and Thursday from 5:00 p.m. overnight to the beginning of school the next day. The Father shall return the children directly to school.

3. The Father shall be responsible for all transportation during visitations with the children.

I am well aware that Lindsey does not want to see her father. As a practical matter, this Court cannot compel a sixteen-year-old to visit with her father. However, I urge Lindsey to reconsider her relationship with her father and talk to her therapist about it. Despite what Lindsey and her mother may say, I do not think that she fears him or is uncomfortable with him. She did go to her father without her mother's knowledge when her mother placed her on restriction after the marijuana incident. Her disappointment in her father for agreeing with her mother's restrictions indicates to me that, whatever her feelings are about her father, she voluntarily went to him because she felt that he would do something to lift the restrictions. I decline at this time to order Lindsey into therapy or counseling with the Father.

I find from the evidence that Matt Fowler is living with the Mother and the three children at the former marital residence at 240 West Main Street in Purcellville. Regardless of what the Mother and her friends may think, this is an immoral atmosphere to which the children, regardless of their ages, should not be exposed. The children are well aware that their mother is sleeping with another man while still married to their father.

The Father is involved in the children's lives. He wants to be more involved. However, I think that the current arrangement is working fine. The Mother may object to the overnight visitation on Tuesdays and Thursdays, but her reasons are not supported by the evidence. She claims the two sons are very close, but she sends them on separate vacations. She complains about their having to commute from Leesburg (where the Father resides) to Purcellville (where the children go to school), but when the parties were together and renovating the marital residence, they commuted every day to school in Purcellville from a temporary residence in Leesburg.

The issue of homework seems to permeate the visitation issue. I urge both parents to be good parents and see that homework is done when each has the children. There is no evidence that commuting from Leesburg has had any adverse effect on any child's homework.

The Mother argues that the Father should not be rewarded because of his "strategic moves creating a precedent" as to Tuesday and Thursday overnight visitations. She seeks some sort of compensation from the Court because she "took the high road" and did not refuse to allow further visitation when the Father decided on his own to not return the sons on Tuesday and Thursday evenings and to keep them overnight.

Visitation is about what is best for the children. It is not about rewards or punishment for good or bad parental decisions. No one will dispute that children should see both parents as much as possible. Regardless of how it came about, if the children are spending Tuesday and Thursday nights with the Father and it is not adversely affecting them, then it should continue.

## Support
### Income of the Parties

I find the Father's gross income to be $8,113.00 per month based upon his paystub from AOL. (Complainant's Exhibit 2.) According to his paystub, he makes $4,056.27 per pay period. He is paid twice a month. His gross income is calculated as follows:

$4,056.27 times 24 = $97,350.48
$97,350.48 divided by 12 = $8,113.00 (rounded)

I find the Mother's gross income to be $2,578.00 per month based upon her paystub from Sevila, Saunders, Huddleston & White. (Complainant's Exhibit 1.) According to her paystub, she makes $1,190.00 per pay period. She is paid every two weeks. Her gross income is calculated as follows:

$1,190.00 times 26 = $30,940.00
$30,940.00 divided by 12 = $2,578.00 (rounded)

Neither party has any other source of income.

### Spousal Support

The Father makes over three times what the Mother makes. Neither party has any extraordinary or abnormal expenses. They find themselves in debt as a result of the separation and also from debt incurred during the marriage.

The parties separated in July 2001. Since that time the Father has made the payments on the first and second mortgages on the marital residence of about $2,800.00 per month. The Mother and the children have continued to reside in the marital residence since the parties separated, although there is evidence that she and the children did live with a friend in Ashburn for several months in the spring of this year. Mr. Fowler also happened to be residing at the friend's residence during that time.

164

At first glance, it would appear that the Mother would be entitled to *pendente lite* spousal support due to the disparity in incomes, if nothing else. However, the Father raises a very relevant issue, the fact that Mr. Fowler is living in the marital residence with the Mother. When asked whether Mr. Fowler contributed toward the Mother's expenses, both the Mother and Mr. Fowler asserted the Fifth Amendment. Her assertion of the Fifth Amendment cannot be used against her under Va. Code § 8.01-223.1. However, there is no such prohibition as to Mr. Fowler's refusal to testify. I think it is almost inconceivable that Mr. Fowler is not contributing something to the Mother, and, even if he is not, she should be charging him rent. It is certainly not appropriate that the Father pay spousal support to the mother so she can provide a place for her live-in paramour.

After consideration of all the evidence, *pendente lite* spousal support is set at $700.00 per month commencing May 20, 2002, when the *pendente lite* motion was filed. Therefore, the Father's *pendente lite* spousal support obligation is as follows:

1. For the period from May 20, 2002, through May 31, 2002, the sum of $271.00 (rounded and pro-rated) is owed.

2. The sum of $700.00 is due on June 1, 2002, and on the first day of each month thereafter until further order of the Court.

Further, the Father may satisfy his *pendente lite* spousal support obligation by paying at least $700.00 per month on the mortgages on the marital residence. Because he has paid the mortgage through August, he is current in his *pendente lite* spousal support obligation.

The Father argues that the Mother is barred from receiving spousal support, including *pendente lite* spousal support, because she is committing adultery with Mr. Fowler. He relies on Va. Code § 20-107.1(B). However, Va. Code § 20-107.1 applies only to a spousal support award made upon dissolution of a marriage, *i.e.*, permanent spousal support as opposed to *pendente lite* spousal support. *Pendente lite* spousal support is awarded pursuant to Va. Code § 20-103 ("sums necessary for the maintenance and support of the petitioning spouse"). An award of *pendente lite* spousal support based upon Va. Code § 20-107.1 would be erroneous. *Weizenbaum v. Weizenbaum*, 12 Va. App. 899, 904, 407 S.E.2d 37 (1991).

Adultery under Va. Code § 20-107.1 or habitual cohabitation for one year or more under Va. Code § 20-109 is not a bar to *pendente lite* spousal support.

*Child Support*

Based upon the visitation awarded to the Father, he will have the children for 104 days each year. This includes two days for each weekend and a half-day for each Tuesday and Thursday. Because the Father's time with the children exceeds ninety days per year, the shared custody child support guidelines apply.

Utilizing the shared custody guidelines, the presumptive amount is $1,157.00 per month.     I find no reason to deviate from the presumptive amount.

The Father's *pendente lite* child support obligation is set at $1,157.00 per month commencing May 20, 2002, when the *pendente lite* motion was filed. Therefore, the Father's *pendente lite* child support obligation is as follows:

1. For the period from May 20, 2002, through May 31, 2002, the sum of $448.00 (rounded and pro-rated) is owed.

2. The sum of $1,157.00 is due on June 1, 2002, and the first day of each month thereafter until further order of the Court.

The Father shall *not* be permitted to satisfy his child support obligation by paying the mortgages on the marital residence. Therefore, through August 22, 2002, there is an arrearage of $3,919.00. The arrearage shall be paid at the rate of $500.00 per month commencing September 1, 2002.